

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAMES JASTROWSKI,               )
                                )
          Plaintiff,            )
                                )    No. 10 CV 7624
     v.                         )
                                )    Hon. Charles R. Norgle
MERLIN'S FRANCHISING, INC. and  )
MERLIN CORPORATION              )
                                )
          Defendants.           )

**OPINION AND ORDER**

Plaintiff James Jastrowski ("Jastrowski") sues Defendants Merlin's Franchising, Inc. ("Merlin Franchising") and Merlin Corporation ("Merlin") (collectively, "Defendants") for a single count of retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et al.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12203(a). Before the Court is Defendants' Motion for Summary Judgment. For the following reasons, the motion is granted.

**I. BACKGROUND[1]**

Defendants are in the automobile repair business and maintain both company-owned and franchise-owned stores. The Wheeling location was one of approximately eight company-owned stores in early 2008. Jastrowski was hired by Merlin on February 7, 2008, after being interviewed by Senior Manager Marc D'Alessandro ("D'Alessandro") and Frank Andrew Smola ("Frank Jr."). At the time of his hiring, Jastrowski did not disclose any disabilities or request any accommodations. Jastrowski began to work as general manager of the Wheeling store in

---

[1] The Court takes the undisputed facts from the parties' Local Rule 56.1 statements and notes disputed facts within the text.

February of 2008. Jastrowski was employed in that position for just under two months until he was terminated on April 9, 2008.

Jastrowski's immediate supervisor was D'Alessandro, a Senior Manager at Merlin who was directly responsible for several company-owned stores. D'Alessandro reported directly to his supervisor, Frank Jr. Frank Jr. reported directly to Merlin's president and Chief Executive Officer, Frank Albert Smola ("Frank Sr."). Frank Jr. and D'Alessandro have hiring and firing authority over all personnel in the company-owned stores. While Frank Sr. has ultimate authority, he does not exercise direct supervision over general managers of the stores, and typically leaves employee concerns to the regional management personnel.

The duties of a Merlin general manager include ensuring that the store complies with Merlin procedure, cleaning, hiring, keeping the store on budget, managing payroll and deposits, and limited computer work, such as entering customer information, generating estimates, verifying stock orders, and printing closing reports.

D'Alessandro, who occasionally fills in as a general manager at company-owned stores, states that it takes no more than five minutes per customer to enter personal information and prepare an estimate on the computer. D'Alessandro characterizes the remaining computer work done by a Merlin general manager—generating reports and conducting inventory—as very minimal, taking no more than two hours per week.

Merlin general managers are expected to work most Saturdays and to attend meetings at corporate headquarters, even when the meetings fall on their scheduled days off. One of the other duties of a Merlin general manager is to maintain the budget for his or her respective store. Jastrowski admits that he was hired to bring the Wheeling store up to a profitable level. It is

undisputed that the Wheeling store did not stay on its budget during the period in which Jastrowski was the general manager.

Merlin Employees are expected to follow Merlin's "Playbook," which is an operational guide for the stores. The Playbook outlines a specific process to follow from the beginning to the end of a customer transaction. In February of 2008, Frank Sr. visited Jastrowski at the Wheeling store and conducted an inspection. Following his review of the store and conversation with Jastrowski, Frank Sr. noticed that Jastrowski was not following Merlin's Playbook. Jastrowski admits that Frank Sr. told him during the course of his employment that it was important to be familiar with the entirety of the Playbook. However, Jastrowski disputes that he was not following the Playbook, and maintains, in his affidavit, that at all times he "operated the Wheeling store and conducted [himself] completely consistent with the requirements of the 'Merlin Playbook.'" Pl.'s Resp. to Defs.' Mot. for Summ. J. Ex. 8, ¶ 3; see also Dunn v. Nordstrom, Inc., 260 F.3d 778, 787 (7th Cir. 2001) ("[Plaintiff] must present more than his own, subjective self-appraisal to create a genuine issue of fact.").

Frank Sr. conducted a follow-up visit at the Wheeling store in March of 2008 and found that Jastrowski was still not following every process as described in the Playbook. On April 4, 2008, Frank Sr., along with Frank Jr. and D'Alessandro, once again visited the Wheeling store. Frank Sr. observed that "[Jastrowski] had turned [the Wheeling store] into a car dealership and he was ignoring our play book." Defs.' Mot. for Summ. J. Ex. 5, at pp. 63:24, 64:1-2.

A meeting was scheduled to take place at Merlin's corporate headquarters on Saturday, April 5, 2008, with Frank Sr., Frank Jr., D'Alessandro, and Jastrowski to discuss operational issues. Jastrowski failed to show up for the meeting, and instead, went to the Wheeling store to pick up his paycheck.

3

During the course of Jastrowski's two-month employment, he had several incidents involving D'Alessandro and Frank Jr. Jastrowski disputes Defendants' characterization of the various incidents as altercations or otherwise. However, the Court rejects Jastrowski's argumentative denials to the extent that they are unsupported by Jastrowski's deposition testimony. See Malec v. Sanford, 191 F.R.D. 581, 584 (N.D. Ill. 2000) ("[A] Rule 56.1(b)(3)(A) response is not the place for purely argumentative denials."). On one occasion, D'Alessandro told Jastrowski to remove his vehicle from the service bay, which was parked there without a repair order in contravention of company policy. Jastrowski contests that there was any company or store policy preventing an employee from parking his or her personal vehicle in the service bay for a short period of time.

On another occasion, during a visit to the Wheeling store, Frank Jr. had arguments with Jastrowski relating to the placement of a tire rack that was against company policy, as well as the unprofessional appearance of a mechanic under Jastrowski's supervision. At Jastrowski's deposition, he characterized this incident as a "flare-up." Defs.' Mot. for Summ. J. Ex. 6, at p. 54:10. During that same visit, Frank Jr. and Jastrowski got into an altercation, which Jastrowski described as a "violent episode," over the fact that Jastrowski had the store door propped open against company policy. Id. at p. 60:7.

Finally, Frank Jr. and Jastrowski engaged in a "shouting episode" over an issue with the landlord and the manager of the neighboring transmission shop. Id. at p. 58:22. Without seeking permission from upper management, Jastrowski contacted the manager of the neighboring transmission shop to see if he would make more parking spaces available for the Merlin shop. As a result, the transmission shop manager called his owner, the owner called the landlord, and the landlord ultimately contacted Frank Jr. Although Jastrowski claimed that he did not believe

4

that he needed to ask permission to contact the transmission shop manager, he stated, "I was stupid and it was a stupid thing I did because Frank received a phone call from the landlord of the property." Pl.'s Resp. to Defs.' Mot. for Summ. J. Ex. 1, at p.1.

The parties agree that in early 2008, Merlin experienced a decrease in sales and revenue from its retail stores. CEO Frank Sr. stated that the company was suffering losses and sales were down in several stores. In an attempt to address Defendants' financial issues, on April 6, 2008, Frank Sr. decided "that there were three or four people [he] was going to do something different with." Defs.' Mot. for Summ. J. Ex. 5, at p. 68:15-16. On April 9, 2008, Frank Sr. terminated Jastrowski without cause for financial reasons because he was the general manager with the least seniority, having been employed by Merlin for less than two months. In addition, a general manager position was eliminated in 2008, and James Elliott, the Director of Franchise Operations, was terminated in April of 2008. Frank Sr. states that he made the decision regarding the layoffs alone, without input from other supervisors or managers. Ultimately, the Wheeling store was closed a few months later in 2008.

Jastrowski disputes that the decision to terminate him was made by Frank Sr. or for purely financial reasons. Jastrowski argues that Frank Jr., with advice from D'Alessandro, made the decision to terminate him because he asked to use a stool as an accommodation for his alleged wrist injury.

Jastrowski alleges that two weeks after he began his employment at the Wheeling store, an old injury from a motorcycle accident in 2006 became aggravated causing him pain in his right wrist when he tried to stand at the computer and type. According to Jastrowski, the only activities which he was unable to perform during this time were: standing at the counter using the

computer for an extended period of time, riding his motorcycle, driving with his right hand on the wheel, and gripping a knife while preparing meals.

Despite his alleged limitations, Jastrowski admits that, even though it was winter, he rode his Harley Davidson FLHT motorcycle to work once or twice. When Jastrowski rode his motorcycle to work, he did not call for a different ride home. Jastrowski describes his motorcycle as a large bike that requires various use of one's right hand, including pulling a lever back with the fingers on the right hand to brake, twisting the throttle counterclockwise with the right hand to accelerate, and twisting the throttle clockwise with the right hand to decelerate.

According to Jastrowski, the pain he experienced in his right wrist from standing at the raised counter to type on the computer was alleviated when he sat on a stool. While Defendants have no written policy against the use of stools in the stores, it is undisputed that Jastrowski was told more than once by Frank Jr. and D'Alessandro to remove the stools.

The parties dispute when anyone from Merlin was informed that Jastrowski was requesting to use the stool as an accommodation. Jastrowski alleges that he informed D'Alessandro two weeks after he started working at the Wheeling store that he needed to use the stool as an accommodation for his right wrist. D'Alessandro contends that he was neither informed of Jastrowski's alleged injury nor that the stool was necessary for purposes of an accommodation until April 3, 2008. Jastrowski alleges that he sent a memorandum to Gregory L. Zera ("Zera"), the Director of Support Services for Merlin, on February 29, 2008, wherein he informed Zera of his need for an accommodation. Zera contends that he never received the alleged memorandum, or any other communication from Jastrowski about his need for an accommodation.

While Jastrowski insists that he informed Frank Jr. of his need to use a stool for purposes of a disability accommodation before April 4, 2008, Frank Jr. states that he did not know that Jastrowski was seeking an accommodation until April 6, 2008 when he filled out Jastrowski's first injury report. Finally, Frank Sr. states that he was not aware of Jastrowski's injury or request to use a stool until April 15, 2008, almost a week after Jastrowski's termination. Jastrowski believes that an email that he sent to the human resources department regarding his request for an accommodation was forwarded to Frank Sr. on or about April 9, 2008. Jastrowski bases his belief on a handwritten notation that directs a copy of the email to be forwarded Frank Sr.

In addition, Jastrowski alleges that he sent a doctor's note to the corporate offices on April 3, 2008. Defendants state that no one from either company ever received a doctor's note from Jastrowski. The note in question is from Jastrowski's doctor, Wesley Smeal, and provides only that "[Patient] to sit for 10 min[utes] every hour [and] when at the computer." Pl.'s Resp. to Defs.' Mot. for Summ. J. Ex. 4.

In sum, while Jastrowski alleges that he was fired by Frank Jr. and D'Alessandro in retaliation for seeking an accommodation for his injured right wrist, Defendants maintain that Jastrowski was terminated by Frank Sr. for economic reasons only, without regard to, or knowledge of, Jastrowski's disability or accommodation. Defendants' motion for summary judgment is fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

"Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"

7

Northfield Ins. Co. v. City of Waukegan, 701 F.3d 1124, 1128 (7th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." Egonmwan v. Cook Cnty. Sheriff's Dep't, 602 F.3d 845, 849 (7th Cir. 2010) (internal quotation marks and citation omitted). The Court views the evidence and draws all reasonable inferences in the light most favorable to the nonmoving party. Benuzzi v. Bd. of Educ. of City of Chi., 647 F.3d 652, 656 (7th Cir. 2011) (citing Groesch v. City of Springfield, Ill., 635 F.3d 1020, 1022 (7th Cir. 2011)). But before the nonmoving party "can benefit from a favorable view of evidence, he must first actually place evidence before the courts." Montgomery v. Am. Airlines, Inc., 626 F.3d 382, 389 (7th Cir. 2010). Simply showing that there is "some metaphysical doubt as to the material facts" will not defeat a motion for summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted); see also Argyropoulos v. City of Alton, 539 F.3d 724, 732 (7th Cir. 2008). If the nonmovant "is unable to 'establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial,' summary judgment must be granted." Benuzzi, 647 F.3d at 662 (quoting Celotex Corp., 477 U.S. at 322).

## B. Retaliation

Jastrowski alleges that Merlin fired him in retaliation for seeking an accommodation for an alleged disability under the ADA. As an initial matter, Jastrowski admits that he was an employee of Merlin Corporation, not Merlin Franchising, Inc. Because he was not an employee of Merlin Franchising, Jastrowski cannot maintain an ADA retaliation suit against it. See Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522, 657 F.3d 595, 601 (7th Cir. 2011) ("The ADA prohibits employers from retaliating against employees who assert their right under the act

to be free from discrimination." (emphasis added)). Accordingly, the Court grants summary judgment in favor of Merlin Franchising.

As to Jastrowski's remaining retaliation claim, the ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act." 42 U.S.C. § 12203(a). To defeat a motion for summary judgment on a retaliation claim, Jastrowski must provide "sufficient evidence of retaliation through either a direct or indirect method." Silverman v. Bd. of Educ., 637 F.3d 729, 740 (7th Cir. 2011).

"Regardless of which method the plaintiff employs to show retaliation, he must first demonstrate that he engaged in activity that is protected by the statute." O'Leary v. Accretive Health, Inc., 657 F.3d 625, 631 (7th Cir. 2011). "A plaintiff filing a retaliation claim need not have opposed an action that *in fact* violated Title VII in order to win this claim; [courts] require only that [he] had a good faith, objectively reasonable belief that the action [he] opposed was a violation." Nelson v. Realty Consulting Servs., 431 F. App'x 502, 506 (7th Cir. 2011). This is not meant to be a high bar, but rather to weed out claims that are completely groundless because they rest on facts that 'no reasonable person possibly could have construed as a case of discrimination.'" Id. (quoting Fine v. Ryan Int'l Airlines, 305 F.3d 746, 752 (7th Cir. 2002)). "If he does not honestly believe he is opposing a practice prohibited by the statute, or if his belief is objectively unreasonable, then his opposition is not protected by the statute." O'Leary, 657 F.3d at 631 (internal citations omitted). "As the motivation and implementation behind the ADA was similar to that of [Title VII], courts often look to [Title VII] for ADA guidance." Dickerson, 657 F.3d at 600.

9

Merlin contends that Jastrowski did not have an objectively reasonable belief that he was disabled and therefore his request for an accommodation for his alleged disability cannot be considered protected activity. See Standard v. A.B.E.L. Servs., 161 F.3d 1318, 1328 (11th Cir. 1998) (finding that the plaintiff failed to show he was engaged in protected activity because the plaintiff could not have reasonably believed that he was entitled to accommodations for his back injury). The ADA defines a disability as: "(A) a physical or mental impairment that substantially limits one or more major life activities of the individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." Dickerson, 657 F.3d at 600 (citing 42 U.S.C. § 12102(1)). "The type of 'major life activities' that must be substantially limited to fall under the purview of the ADA include, but are not limited to: caring for oneself, learning, reading, concentrating, thinking, communicating, and working." Id. (citing 42 U.S.C. § 12102(2)). "In determining whether a disability 'substantially limits' a person from performing a major life activity, courts consider 'the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.'" Serednyj v. Beverly Healthcare, LLC, 656 F.3d 540, 554 (7th Cir. 2011) (quoting Kampmier v. Emeritus Corp., 472 F.3d 930, 937 (7th Cir. 2007)).

Here, Jastrowski fails to show that he had an objectively reasonable belief that he was disabled. Jastrowski states that his wrist injury only limited him in typing at the computer while standing, riding his motorcycle, driving with his right hand on the wheel, and holding a knife to chop while making meals. Jastrowski has not produced any evidence to show that his doctor, or anyone else, gave him reason to consider his right wrist injury "as impairing his ability to work in a long term or permanent way." Standard, 161 F.3d at 1328. Indeed, the note from

Jastrowski's doctor does not even mention an injury or disability. Furthermore, despite his alleged limitations, it is undisputed that Jastrowski road his motorcycle to work at least once in the middle of winter during his two-month employment. The evidence further shows that riding his large, Harley Davidson FLHT motorcycle required Jastrowski to make multiple movements with his right hand and wrist. These facts do not support an objectively reasonable belief of a disability. Because Jastrowski fails to show that he had an objectively reasonable belief that he was disabled, he is unable to satisfy his prima facie case and prove that he was engaged in a protected activity when he asked for an accommodation. Accordingly, his retaliation claim fails. However, in an abundance of caution, the Court addresses Jastrowski's retaliation claim under the direct and indirect methods of proof.

### *1. Direct Method*

Under the direct method of proof, Jastrowski must be able to show through either direct or circumstantial evidence: "(1) that [he] engaged in a statutorily protected activity; (2) that [he] suffered a materially adverse action by [his] employer; and (3) there was a causal link between the two." Silverman, 637 F.3d at 740. While direct evidence "essentially requires an admission by the employer . . . circumstantial evidence of retaliation may include suspicious timing, ambiguous statements, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." Harper v. C.R. Eng., Inc., 687 F.3d 297, 307 (7th Cir. 2012) (internal quotation marks and citation omitted).

Jastrowski can survive summary judgment if he produces some evidence that retaliation was the cause of his discharge, "unless the defendant can produce uncontradicted evidence that he would have fired the plaintiff anyway, in which event the defendant's retaliatory motive, even

if unchallenged, was not a but-for cause of the plaintiff's harm." Stone v. City of Indianapolis Pub. Utils. Div., 281 F.3d 640, 643 (7th Cir. 2002).

It is undisputed that Jastrowski suffered an adverse employment action when he was terminated from his employment at Merlin. Assuming arguendo, that Jastrowski's request for an accommodation constitutes protected activity, he nonetheless must establish a causal connection between his request and his termination. Jastrowski fails to provide any evidence to contradict Merlin's evidence that, notwithstanding any alleged retaliatory motive, he would have been fired by Frank Sr., for economic reasons.

Jastrowski admits that he never personally told Frank Sr. about his request for an accommodation. While Jastrowski believes that an email was forwarded to Frank Sr. before the time of his termination, he has no evidence to support his mere assertion that the email was forwarded, or that Frank Sr. read and was aware of the information contained therein before April 15, 2008. Therefore, Jastrowski fails to contradict Merlin's evidence that Frank Sr. was unaware of his request for an accommodation. See Montgomery, 626 F.3d at 389 ("[M]ere conclusory allegations do not constitute evidence." (citing Balderston v. Fairbanks Morse Engine Div. of Coltec Indus., 328 F.3d 309, 320 (7th Cir. 2003))); Mlynczak v. Bodman, 442 F.3d 1050, 1058 (7th Cir. 2006) ("[I]f the subjective beliefs of plaintiffs in employment discrimination cases could, by themselves, create genuine issues of material fact, then virtually all defense motions for summary judgment in such cases would be doomed." (internal quotation marks and citation omitted)); McDonald v. Vill. of Winnetka, 371 F.3d 992, 1001 (7th Cir. 2004) ("Inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." (citing Bell v. Duperrault, 367 F.3d 703, 707 (7th Cir. 2004)).

Additionally, Jastrowski's mere self-serving contention that he was fired by Frank Jr. and D'Alessandro and not Frank Sr. is insufficient to rebut the evidence that Frank Sr. alone made the decision to lay off a number of employees, including Jastrowski, for economic reasons only. Jastrowski admits that Defendants were suffering financially in 2008, that the Wheeling store was unable to meet its budget, and that the Wheeling store was ultimately closed in late 2008. Because Jastrowski fails to submit any evidentiary materials to contradict Merlin's evidence that he would have been fired anyway for non-retaliatory reasons, he fails to establish a causal connection between a protected activity and an adverse employment action. Therefore, Jastrowski's retaliation claim fails under the direct method of proof.

### 2. *Indirect Method*

Under the indirect method, a prima facie case of retaliation is established by showing that: "(1) he engaged in a statutorily protected activity; (2) he met his employer's legitimate expectations, i.e., he was performing his job satisfactorily; (3) he suffered a materially adverse action; and (4) he was treated less favorably than some similarly situated employee who did not engage in the statutorily protected activity." Harper, 687 F.3d at 309. "Once a plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a non-discriminatory reason" for the retaliation. Id. "If the defendant meets its burden, the burden shifts back to the plaintiff to show that a genuine issue of material fact exists as to whether the defendant's proffered reason was pretextual." Id.

The parties agree that Jastrowski suffered an adverse employment action, and that, for purposes of this argument, he was engaged in protected activity. However, Jastrowski fails to provide any evidence to show that he was meeting his employer's legitimate expectations or that he was treated less favorably than a similarly situated employee who was not engaged in

13

protected activity. To the contrary, the evidence shows that Jastrowski was not meeting his employer's legitimate expectations.

Specifically, the evidence shows that Jastrowski, on multiple occasions, violated company policy and/or engaged in other unprofessional conduct. One such incident occurred when D'Alessandro had to tell Jastrowski to remove his personal vehicle from the service bay. On another occasion, Jastrowski and Frank Jr. engaged in "shouting episodes" over various violations of company policy. These violations included the positioning of a tire rack, a mechanic who had his shirt un-tucked, and the door to the store which Jastrowski had propped open. Yet another incident occurred when Jastrowski called the manager of the transmission shop without permission in an attempt to serve his own desire for more parking spaces. This phone call, which Jastrowski acknowledged was a "stupid thing [he] did," resulted in a conflict with the landlord that was brought to the attention of Frank Jr. Pl.'s Resp. to Defs.' Mot. for Summ. J. Ex. 1, at p.1.

In addition, Jastrowski admits that he failed to attend a scheduled meeting on April 5, 2008, and that he failed to bring the store up to a profitable level which was one of the objectives given to him upon his hire. Despite these incidents, Jastrowski argues that, because Merlin alleges that he was fired for economic reasons—not his performance—whether he was meeting his employer's legitimate expectations is irrelevant. Not so. Jastrowski fails to establish this element of his prima facie case. His claim therefore fails as a matter of law.

In any event, Merlin has presented a non-discriminatory reason for Jastrowski's discharge, that Jastrowski fails to show is pretextual. Merlin maintains that Jastrowski, as the general manager with the least seniority, was discharged by Frank Sr. for economic reasons, without regard to, or knowledge of, Jastrowski's requested accommodation. As discussed above,

Jastrowski fails to contradict Merlin's evidence—offering evidence only in support of his own theory, which is insufficient to rebut Merlin's proffered reason for his termination. See U.S. Dist. Ct. N.D. Ill. Local Rule 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); Tibbetts v. Radio Shack Corp., No. 03 C 2249, 2004 WL 2203418, at *9 (N.D. Ill. Sept. 29, 2004) ("Where a proposed statement of fact is supported by the record evidence and not adequately rebutted, the court is entitled to presume that statement is true for purposes of summary judgment"). Because Jastrowski is unable to show that Merlin's proffered reason is pretextual, he fails to establish retaliation through the indirect method of proof.

## III. CONCLUSION

For the foregoing reasons, the Court enters summary judgment for Defendants.

IT IS SO ORDERED.

ENTER:

_____

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: March 5, 2013